Our fifth case this morning is United States v. Willie Jones, case number 14-3103. If it pleases the court, counsel, my name is Nishe Sanon. I represent the appellant, defendant Willie Jones. Your honors, this case focuses around the sentence that Mr. Jones received and whether or not the court, the district court, properly calculated his guidelines, which the case law has made clear as the first starting point to any sentencing in a federal criminal case, and whether or not the court properly applied the 3553 factors or whether it abused his discretion. We've raised several arguments as to whether or not the guidelines were properly calculated. The first one has to do with the leader-organizer enhancement and whether or not the court properly looked at unwanted discrepancies between defendants as a whole and whether or not he ignored a defendant that was actually in the case. One of the issues that was raised at the sentencing hearing is whether or not Mr. Jones was an appropriate level four-point enhancement for a leader-organizer or should he have been a three-point enhancement as the co-defendant, Jackson, was quote-unquote agreed to in his plea agreement. There was a hearing and witnesses were presented, and the one thing the judge said at the district court level is, I'm not here to sentence Mr. Jackson. I'm here to consider Mr. Jones. Mr. Jackson's sentencing is down the future, and I may consider Mr. Jones's sentence when considering Mr. Jackson's. That right there, we believe, is an abuse of discretion or 3553A6, the unwarranted discrepancies within sentences. Now, this is not just an unwarranted discrepancy among sentences, among defendants who are similarly situated in what the guidelines try to avoid. This is actually an unwarranted discrepancy within the actual case itself. You have two defendants. The testimony at the sentencing clearly showed that these two people were equally involved in the scheme to defraud. Yet, Mr. Jones received a four-point enhancement for leader-organizer. Mr. Jackson, who was found, at least by the court's statements, to be equally as culpable, only received a three-point enhancement. So we believe, based on that, the guidelines were improperly- Maybe Mr. Jackson got a break. Well, there's no disagreement that Mr. Jackson was a cooperator, but if you're applying the guidelines. Well, I'm not saying that. If the court was wrong, maybe the court was wrong in not assessing four points to Jackson as opposed to not assessing three points to your client. But, Judge, I think the problem with that is the court would even consider what was going to happen to Mr. Jackson, even though testimony was presented. What the court specifically said in the sentencing is, I'm not here to figure out what's happening to Mr. Jackson. I'm here regarding Mr. Jones. Right there, the court kind of states that it's not even considering discrepancies. No, no, no. What the court is saying is, Mr. Jackson doesn't have a lawyer here to represent him. I'll consider his status, but I'm not going to actually sentence him today in conjunction with your client. Judge, I understand that point. But what I think that creates, then, is you're going to have defendants in multi-defending cases jockeying for position on when should they be sentenced. Should we wait to see what happens to a person who's similarly situated, and then play off that? Or is it better for us to get sentenced ahead of time? I think what is happening by Judge Shader not taking into consideration a plea agreement where you have two equally culpable people, not even taking into consideration what the government's recommending for Mr. Jackson, I think would be an abuse of discretion, A, under 3553A6, but also when it comes to calculating the guidelines. I mean, yes, he may have caught a break, and Judge Shader may have given him a break based on a plea agreement. Mr. Jones blind played, but at minimum, under 3553A6, unwarranted discrepancies should be taken into consideration. Except that refers only to unwarranted discrepancies across districts, across judges. It doesn't have to do with how you treat co-defendants. But Judge, within a case, okay, if you look at amongst the district, if we look at the Northern District of Illinois, which includes, Judge, where you sit. You look at all defenders. I'm down south. Sorry, Judge South, Southern District of Illinois, I apologize. And there's life below I-80. I believe you, Judge. I've been down there, Judge, I believe you. I've been, I know where the courthouse is, actually. There you go. But, Judge, you look at unwarranted discrepancies. If you look at nationwide, district-wide, districts within the same state, you're not supposed to have unwarranted discrepancy amongst defendants. That was the whole purpose of the guidelines when they were mandatory. Obviously, the guidelines have to be looked at now. Actually, that wasn't the whole purpose, but go ahead. It makes no difference. That's one of the things they kept telling us, Judge, that that was one of the. Yeah, I know. Maybe if we get an economist to tell us otherwise. They were goofy then, they're goofy now, so go ahead. I agree with you, Judge, they are goofy. But, Judge, if the goal is to look at unwarranted discrepancies district-wide, nationwide, why wouldn't you look at unwarranted discrepancies within the case that's right before you when you have multiple defendants who are equally as culpable? So, we believe, Judge Shader, by saying he's not even going to consider what's going to happen to another defendant where- Because he doesn't know what's going to happen to the other defendant until he hears that defendant's case. Well, Judge, the one thing that did happen, though, is the government decided to put on witnesses to testify as to what the roles of each of the parties were. So, I think at that point, we brought out what he was facing, at least in his plea agreement. Yes, he hadn't been sentenced and he wasn't being sentenced that day. I agree with you on that. But, before the court was what the government was recommending for someone who was similarly situated. And the court basically said it's not going to take that into consideration, which would cause an unwarranted discrepancy at some point. I know I'm going to run into my rebuttal time, but one of the other arguments I just want to bring before this court is this court's made it clear in its previous cases that a victim is defined as someone who may have been reimbursed and may not have actual loss at this time. I'm asking this court to revisit that and follow some of its sister circuits, specifically the Third, Fifth, and Sixth, where the Third, Fifth, and Sixth circuits have found that the actual bank is the victim because the person who had his identity stolen or money lost out of his account was reimbursed. So, the definition of what an actual loss to a victim should be, the bank's, not the individual's, because they have been reimbursed. No further questions at this time. I'd like to save some time for rebuttal. So, you're saying if somebody steals my identity. Correct. And I have trouble with Experian and all the credit agencies, that it's the bank that's the victim and not me when I can't get credit or I have to explain why I've got all these charges on my account. Judge, what I'm saying is the actual loss, which is the financial loss to the victim. The victim, let's say you're the person whose credit card was used to buy a new brand-new TV at Target. Right. You've been reimbursed that amount. There's, so you have no. The first 50 bucks I'm responsible for, although most banks will waive that. I should have you talk to my bank because I don't have that problem. But what happens is the funds get returned to you. So, you are a, quote, unquote, what I would look at as temporal or temporary victim. You, at the end of the day, have no actual loss because the bank has reimbursed you. And that's the reasoning in the Third, Fifth, and Sixth Circuit is, because you have been reimbursed by your bank, you don't have an actual loss. The actual loss would be the bank's. In this case, there were nine banks, so less than 10, which is what the guideline enhancement then bumps you up to two points. Thank you. Mr. Hernandez. Good morning. May it please the court, Matthew Hernandez on behalf of the United States. The defendant's sentence should be affirmed in this case because the district court properly calculated the guideline sentence and imposed a reasonable sentence within that range. I'll address the defendant's last argument regarding the number of victims. And I think your honor is quite right that in cases involving identity theft, there is a very different type of harm aside from pecuniary loss. And the other thing I'll point out is the cases cited by the defendant all preceded the introduction of Application Note 4E, which specifically instructs the court on how it's supposed to calculate victims when there's means of identification involved in the case, as there was in this case. The decision in United States v. Panis did not involve means of identification, therefore, the court did not analyze Application Note 4E. With regards to the defendant's argument that there's been an unwarranted sensing disparity, the district court did not abuse its discretion in imposing a more severe sentence on the defendant. As this court has repeatedly held, the best way to avoid sensing disparities is to impose a guideline sentence, and that's exactly what happened in this case. Moreover, under the facts of this case, there are a number of reasons why a disparity was warranted. The first of which, the defendant continued to engage in fraud while he was on bond. The district court specifically noted that the defendant's conduct on bond constituted, quote, a very troubling factor at the defendant's sentencing hearing. You compare that with his co-defendant, Mr. Jackson, who cooperated with the government. He cooperated early, he testified against the defendant at his sentencing hearing. He, when he was on pre-trial release, went to the government and told the government that Mr. Jones was continuing to engage in fraud. And the district court, at Mr. Jackson's sentencing, even noted that comparing the two, he wouldn't even begin to compare them because of the, that is both because of the cooperation, because of the deference that I've heard about and that I have observed with Mr. Jackson. So we can actually look at Mr. Jackson's sentencing hearing and see that he, he actually compared these two individuals and found that because of the deference and the cooperation, they were just apples and oranges. Regarding the extent of the disparity that the defendant received, that was an issue that was solely within the discretion of the district court. He was able to view the two defendants, he was able to hear the testimony. With regard to the defendant's argument that he should not have received the leadership enhancement, the district court stated after reviewing the PSR that it seems plain from the description referring to the PSR that Mr. Jones was indeed the leader or organizer of the criminal activity. And he later characterized the PSR's recommendation that the enhancement apply as, quote, unimpeachable. The court's ruling is supported by evidence in the record, including Foster's testimony at the sentencing hearing, that the defendant was the primary decision maker, that the defendant recruited her and she was in fact responsible for the vast majority of the fraud that was committed. Her testimony was, again, that she, the defendant recruited, trained, and taught the, the quote, writers how to cash checks. He provided the writers with the fake IDs and secondary information. He decided which targets to, to hit, which banks to hit, which victims to to try and access her accounts. And when Foster was caught trying to perpetrate the scheme in, in Pittsburgh, she testified that he provided her with a lawyer. He also provided her with funds in her commissary account. As a result, district court did not err on applying a, a four level enhancement because the defendant was an organizer or leader. If the court has no further questions, I'd ask that the court affirm the defendant's sentence. Thank you. Shannon, anything further? You've got two minutes. Judge, just going back to what was talked about regarding the discrepancy issue. We're not arguing that he doesn't, that Mr. Jackson doesn't get a better sentence because he cooperated or did like, things like that. The issue that we have raised is whether or not the court created an unwarranted discrepancy by not taking into consideration what Mr. Jackson, which has nothing to do with his cooperation, it's basic guideline calculation on whether or not he's a leader organizer or not. And if you look at what Judge Shader says after the government put on its two witnesses, we're spending a lot of time on an issue. So what, what it, what it seems here is they both have the same role. That's when he goes into I'm not sentencing Mr. Jackson at this time, I'm sentencing Mr. Jones. So the unwarranted discrepancy starts off with basic guideline calculation. We have two people who do identical acts in which the testimony supports because the government had called Ms. Eileen Foster and Mr. Jackson to the stand and the outcome after their testimonies, Judge Shader saying, okay, you have two people who conducted the same type of conduct within this scheme. Yet Mr. Jones then gets a fourth level enhancement and the government and PSI and the governor Jackson only a three point enhancement. And then judge going, unless there's any other questions regarding the unwarranted discrepancy as to that issue, I'd like to just discuss the definition of a victim. Again, going back to what a victim encompasses, especially under 2B1.1 it's where is the actual loss? The actual loss in this case, as in the third circuit, the fifth circuit and sixth circuit was actually to the bank because the bank is the person who reimbursed the underlying people who lost money on their credit cards and things like that. If there's any other further questions, I'd be happy to answer them. Was there a vulnerable victim enhancement? There was not judge. The enhancements were for the number of victims actually. Okay. Which is what elderly women who were victims. There was, but there was no vulnerable victims. You dodged a bullet on that one. Thank you. Our thanks to both the council and the case is taken under advisement.